RECEIVED
APR 2 1 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| LAMBERT PHILLIPS, JR. | CIVIL ACTION NO. 03-1984 |
| VERSUS | JUDGE DOHERTY |
| WILLIAMS OILFIELD SERVICES-<br>GULF COAST COMPANY, LLP | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

### I. Introduction

Pending before the Court is a Motion for Summary Judgment [Doc. 63] filed by Total E&P USA, Inc. ("Total") and Williams Field Services - Gulf Coast Company, L.P. ("Williams"), wherein Total and Williams seek a judgment ordering General Marine Leasing, L.L.C. ("GML") to defend and indemnify Williams pursuant to a Master Service Agreement ("MSA") entered into by Total and GML. The motion is opposed by GML. All briefing has now been completed and the motion has been taken under advisement.

### II. Background

This litigation arises out of a claim of personal injury by plaintiff, Lambert Phillips, Jr. According to Mr. Phillips, he was injured when he slipped and fell on the top deck of a platform where he was working for GML as a galley hand. The platform is owned by Williams and is located on the Outer Continental Shelf. Total is a producer on Williams' platform. GML provides catering services aboard the platform pursuant to the Master Service Agreement entered into by Total and GML in 2001.[1]

---

[1] The MSA was entered into by GML and TotalFinaElf E&P USA, Inc. Defendant asserts by way of affidavit that Total E&P USA, Inc. is a successor-in-interest by reason of a name change of

Plaintiff sued only Williams for the injuries he allegedly incurred. Williams filed a third-party complaint against Total, alleging that Total owed it defense and indemnity for "any and all claims or causes of action such as the one brought by Lambert Philips, Jr.," pursuant to a contract identified as the "Canyon Express Pipeline System Production Handling Agreement" ("PHA") dated November 15, 2000. [Doc. 27] Total answered the complaint, stating that it would fully assume the defense of Williams in accordance with the PHA. [Doc. 29]

Total, on behalf of itself and Williams, then tendered the defense of this suit to GML and made demand for indemnity pursuant to Section 5.1 of the MSA, which contains an indemnity provision whereby GML agreed to indemnify Total and its contractors under certain circumstances from claims or causes of action brought by GML's employees. GML refused the tender. Total and Williams' then filed a cross-claim/counterclaim against GML seeking defense and indemnity. At a telephone conference held on February 16, 2006, GML admitted it owes defense and indemnity to Total. The issue now remaining before the court, pursuant to Total and Williams' Motion for Summary Judgment, is whether or not Section 5.1 of the MSA between Total and GML requires GML to defend and indemnify Williams as a contractor of Total in response to claims brought by GML's employees.[2]

---

TotalFinaElf E&P USA, Inc., and that TotalFinaElf E&P USA, Inc. was successor-by-merger to Total Exploration USA, Inc. GML objected to this assertion on the grounds that the affidavit relies on the business records of Total, but the records were not attached to the affidavit or to Total's brief. However, the parties subsequently reached agreement that Total E&P USA, Inc. is the successor-in-interest to TotalFinaElf E&P USA, Inc. (See transcript of February 16, 2006 telephone conference.)

[2] At the telephone conference held on February 16, 2006, GML argued Total was making two claims. The first is Total's claim on behalf of Williams for defense and indemnity pursuant to Section 5.1, which provides for defense and indemnity of Total's contractors; the second claim GML alleges Total is making is for the defense and indemnity obligations Total owes to Williams pursuant to the PHA. Counsel for Total and Williams stated on the record, and this Court agreed, that his motion for summary judgment does not address the second claim that GML describes. While Total's pleadings may

## III. Applicable law

Following extended discussions at telephone conferences, as well as supplemental briefing ordered by the Court regarding the law applicable to this claim, the parties have been unable to agree as to what law applies to the issue before the Court. Total argues general maritime law governs the defense and indemnity obligations under the MSA. [Doc. 91]. GML argues Alabama law should apply pursuant to the Outer Continental Lands Act (OCSLA). The MSA between Total and GML provides that general maritime law applies to the extent permitted by law; if general maritime law is precluded, Texas state law is to apply. (See MSA Section 19).

The Fifth Circuit has held that OSCLA provides a Congressionally mandated choice-of-law provision that trumps any contrary contractual provisions. *See* 43 U.S.C. 1333(a)(2)(A); *see also* Union Tex. Petroleum Corp. v. PLT Eng'g, Inc., 895 F.2d 1043, 1050 (5th Cir. 1990); Snyder Oil Corp. v. Samedan Oil Corp., 208 F.3d 521, 523 (5th Cir. 2000) ("This Congressionally mandated choice of law provision [43 U.S.C. 1333(a)(2)(A)] trumps any contrary contractual provisions."); and Wooton v. Pumpkin Air, Inc., 869 F.2d 848 (5th Cir. 1989) (OCSLA mandates that the applicable substantive law be that of the adjacent state; it does not permit application of the adjacent state's choice-of-law rules to determine applicable substantive law.) As OCSLA provides that the applicable law is that of the adjacent state, and all parties agree that the accident occurred on the outer continental shelf adjacent to Alabama, the Court will apply Alabama law to the indemnity provision at issue.[3]

---

be read broadly enough to include that claim, they are not addressed in the motion for summary judgment. (See transcript of February 16, 2006 telephone conference.)

[3] Although the court has concern whether the Fifth Circuit intended its ruling to be read so broadly, particularly in light of the well established distinction between an analysis of issues grounded in

3

## IV. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. Proc. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R. Civ. Proc. 56(e).

As the Fifth Circuit has pointed out:

> This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.* ...[S]ummary judgment is appropriate in *any* case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations omitted)(emphasis in original).

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, "[t]he court must view facts and inferences in the light most favorable to the

---

tort versus contract, none the less, the language of the Court is clear, and as a district court this Court is bound by that language.

4

party opposing the motion." Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 762 (5th Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party." Id. In evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." Id. To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party *that the jury is not required to believe*, and should give credence to the evidence favoring the non-moving party, *as well as that evidence supporting the moving party that is uncontradicted and unimpeached.*" Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001) (emphases added).

V.  **Analysis**

The indemnity provision at issue in this matter, Section 5.1 of the MSA, reads as follows:

> 5.1 Contractor's Indemnification. **Contractor[4] agrees to RELEASE, DEFEND, INDEMNIFY, and HOLD HARMLESS Company[5]** and its parent, subsidiary, related and affiliated corporation(s), partnership(s), and limited liability companies, and its and all of their co-owners, co-lessees, partners, co-contractors, and joint venturers, and the officers, directors, employees, agents, assigns, representatives, managers, consultants, insurers, subrogees, **and other contractors** and subcontractors (with the exception of Contractor and its subcontractors) **of all of the foregoing and any other person and entity to the extent Company is contractually obligated to provide indemnity** or insurance protection (individually and collectively referred to as "Company Group") **from and against any and all claims, losses and expenses**, including, without limitation, all costs, demands, damages, suits, judgments, fines, penalties, liabilities, debts, attorneys' fees, and causes of action of whatsoever nature or character, and further including, without limitation, any and all claims, losses and expenses for property damage, bodily injury, illness, disease, death, or loss of services, wages, consortium or society (the foregoing being herein individually and collectively referred to as "Claims, Losses and Expenses") directly or indirectly **arising out of or related to bodily injury,**

---

[4] "Contractor" is defined as GML.

[5] "Company" is defined as TotalFinaElf E&P USA, Inc.

5

illness, disease or death **of**, or damage to property of, **Contractor** or its subcontractors, **or its or their employees**, in any way directly or indirectly, arising out of, or related to, the performance or subject matter of this Agreement or the ingress, egress, loading, or unloading of cargo or personnel, or any presence on any premises (whether land, building, vehicle, platform, aircraft, vessel or otherwise) owned, operated, chartered, leased, used, controlled or hired by Company Group or Contractor or its subcontractors, and expressly including any sole or concurrent negligence, fault or strict liability (of whatever nature or character, including unseaworthiness, preexisting conditions, and/or premises defects) of Company Group or any other person or entity. The indemnity obligations set forth in this Section shall include any medical, compensation or other benefits paid by Company or any member of Company Group in connection with employees of Contractor (or its subcontractors, if any) and shall apply even if the employee is determined to be the statutory or borrowed employee of Company or any member of Company Group. IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO, BOTH COMPANY AND CONTRACTOR, THAT THE INDEMNITY PROVIDED FOR IN THIS SECTION IS AN INDEMNITY BY CONTRACTOR TO INDEMNIFY AND PROTECT COMPANY GROUP FROM THE CONSEQUENCES OF COMPANY GROUP'S OWN NEGLIGENCE, FAULT OR STRICT LIABILITY, WHETHER THAT NEGLIGENCE, FAULT, OR STRICT LIABILITY IS THE SOLE, JOINT OR CONCURRING CAUSE OF THE BODILY INJURIES, ILLNESS, DISEASE OR DEATH OR PROPERTY DAMAGE. (Emphasis added.)

Section 5.1 of the MSA requires GML to "DEFEND, INDEMNIFY, and HOLD HARMLESS" entities and persons defined as "Company Group," which includes Total and Total's contractors, from any claims or causes of action brought by GML's employees in any way arising out of GML's performance under the MSA.[6] The MSA unambiguously states that the indemnity by GML includes any alleged negligence, fault, or strict liability of Total and its contractors. Williams is a "processor" of hydrocarbon production of Total at the Main Pass 261 platform, thereby making Williams a contractor of Total.[7] At a telephone conference held February 16, 2006, GML agreed

---

[6] GML does not dispute that plaintiff's claim arises out of GML's performance under the MSA. (See transcript of February 16, 2006 telephone conference.)

[7] See Production Handling Agreement.

that Williams is a contractor of Total. (See Transcript dated February 16, 2006 and Doc. 89.) As such, it would seem GML owes defense and indemnity to Williams as a contractor of Total.

GML essentially argues that the Court should not focus upon the portion of Section 5.1 upon which Total relies (wherein indemnity is provided for Total's contractors) and instead also, look to that portion of Section 5.1 that provides for defense and indemnity to Total "and any other person or entity to the extent Company [Total] is *contractually obligated* to provide indemnity... ." (Transcript of February 16, 2006 telephone conference.) (emphasis added). GML argues that because Total was not sued by plaintiff in this lawsuit, there is nothing from which to defend and indemnify Total and its contractors. Therefore, one must look to the second indemnity provision providing for contractual indemnity. (Transcript of February 16, 2006 telephone conference.) GML further argues that under this second indemnity clause, its obligation should be limited to 2/7 of the total cost of the Williams' defense and indemnification because, under the PHA, there are seven producers (five of whom are not Total entities) that must defend and indemnify Williams. GML's reasoning is a follows:

> GML is only obligated to defend and indemnify "Company" [TotalFinaElf E&P USA, Inc.] for its contractual defense and indemnity obligations to others [Williams]. GML is not required to provide defense or indemnity to "Company Group" for their contractual defense and indemnity obligations to others [Williams]. In other words, GML does not have an obligation to defend or indemnify the five (5) non-Total entities (Mariner, Pioneer, Amoco, Marathon, and BHIB) for their contractual defense and indemnity obligations to Williams.
>
> Those other five (5) non-Total entities owe the identical defense and indemnity obligation to Williams as does Total. If seven (7) parties (two Total entities, EEI&TEPUSA and five (5) non-Total entities, Mariner, Pioneer, Amoco, Marathon and BHIB) owe defense and indemnity to Williams, then GML only owes Total and/or Williams the 2/7 attributed to Total under the Canyon Express Agreement.

7

Article XII, specifically 12.2E (Page 46) provides that "the Producers [all seven (7) parties that are defined as Producers] shall release and unconditionally indemnify, defend, and hold the Processor Group [Williams] harmless from and against... [Doc. 66, p. 6]

In supplemental briefing, GML argues that these two separate contracts (the MSA and the PHA) "create multiple obligations and multiple obligors allowing the same defense and indemnity obligations to Williams." [Doc. 90, p. 8] GML argues "as a result, all parties have the same obligation and should be equally responsible for the performance of that obligation." GML has cited no authority for its position.

While GML has made an intriguing argument, it has cited the Court to nothing disposing of Total's argument that the indemnity provision of the MSA obligates GML to defend and indemnify Total's contractors if those contractors are sued by GML's employees for injuries arising out of GML's performance under the MSA. Instead, GML argues, without support, that Total cannot choose which portion of the indemnity obligation under which it will proceed.

Under Alabama law, "It is fundamental, of course, that parties may contract as they see fit so long as they do not offend some rule of law or contravene public policy, and a court will not attempt to alter the expressed intentions of the parties if they are clear and unambiguous. <u>Vardaman v. Benefit Association of Railway Employees</u>, 82 So.2d 272 (Ala. S. Ct. 1955). "The determination of whether or not a contract is clear and unambiguous is a question of law for the court to decide." <u>Garrett v. Alfa Mutual Ins. Co.</u>, 584 So.2d 1327, 1330 (Ala. S.Ct. 1991). In the instant matter, the Court finds the contract and indemnity provision at issue to be clear and unambiguous. Pursuant to Section 5.1 of the MSA, GML agreed to defend and indemnify Total and its contractors, "from and against any and all claims, losses and expenses... arising out of or related bodily injury... of

contractor [GML] ... or their employees, in any way, directly or indirectly arising out of, or related to, the performance or subject matter of this Agreement [MSA]... ." The fact that the indemnity provision provides an additional circumstance under which GML might also owe defense and indemnity (*i.e.*, defense and indemnity for Total's contractual obligations) does not negate the fact that GML, nonetheless, also agreed to defend and indemnify Total and its contractors for claims made by GML employees arising out of performance under the MSA.

This Court finds further guidance in Lirette. v. Popich Bros. Water Transport, Inc., 699 F.2d 752, 728 (5th Cir. 1983).[8] In Lirette, the Captain of an oil vessel brought suit against a vessel owner and an oil company. The oil company sought indemnity from the time-charterer, who then cross-claimed against the owner and its insurer for indemnity.[9] When the owner sought to defray or avoid its indemnity to the oil company by invoking the charter between the time-charterer and the oil company[10], the Fifth Circuit held that the charter between the time-charterer and the oil company was irrelevant:

> Here Popich [owner] in the Popich/Candies [charterer] charter undertook to indemnify not only Candies but Exxon [oil company] as

---

[8] Although the two public published opinions dealing with Lirette do not state whose law they apply, this Court presumes it is not Alabama law. Nevertheless, the Court finds their reasoning persuasive, as they appear to rely primarily on an analysis of the four corners of the contract. Furthermore, neither GML, Total nor this Court when conducting independent research has found any Alabama law addressing the precise issue before the Court.

[9] The charter between the owner and the time-charterer provided that the owner would indemnify and hold the charterer and the oil company harmless from claims of injury by the owner's employees unless caused by the sole negligence of the charterer.

[10] The charter between the time-charterer and the oil company required the time-charterer to indemnify the oil company against claims for injuries of the oil company's employees or employees of parties other than the time-charterer resulting from willful or negligent acts of the time-charterer or its agents, even though arising from the joint/concurrent negligence of the oil company, its agents, or unseaworthiness of any vessel of the time-charterer or the oil company.

9

well. In Candies' claim over, Popich was not, as in Corbitt, being subjected to a liability arising from and imposed by a completely separate contract between two outsiders. Rather, it was called upon to make good its contractual obligation to hold Candies (and Exxon) harmless from claims, suits or damage "arising out of, or in any way connected [with] the operation of the vessel under this charter." Popich's obligation to reimburse Candies for amounts due Exxon arose, not because of the separate agreement Candies had with Exxon, but because of Popich's express undertaking to make good to Exxon all such losses. Candies acting as a conduit did not alter that obligation.

Applying the reasoning of Lirette to this matter, GML's obligation to indemnify Williams arises not because of a separate agreement between Total and Williams or Total and any other producer, but because of GML's express undertaking to make good to Williams for all such losses associated with claims by GML's employees. Total acting as a conduit did not alter that obligation. GML's obligation arises directly from the MSA, not through the PHA or any contract between Total and the other producers. The PHA and any other contract between Total and other producers are completely irrelevant to GML's express undertaking under the MSA to indemnify Total and its contractors.

Williams is a contractor of Total - a fact that GML does not contest. As such, Williams and Total are entitled to enforce the defense and indemnity obligations that GML agreed to perform pursuant to the MSA. This Court, drawing all reasonable inferences in favor of the non-moving party, finds Total and Williams' Motion for Summary Judgment to be well grounded in law and fact. The Motion for Summary Judgment therefore shall be and hereby is GRANTED.

VI.  **Conclusion**

For the foregoing reasons, the Motion for Summary Judgment, filed by Total and Williams, asking this Court to rule that the Master Service Agreement between Total and GML requires GML

to defend and indemnify Total and its contractor Williams in response to a claim brought by GML's employee, is GRANTED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 21st day of April, 2006.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE